## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BARBARA HARRIS,

        Plaintiff,

vs.                                                    Case No.  3:20-cv-1394-MMH-JBT

FLORIDA TOURISM INDUSTRY
MARKETING CORPORATION,
INC.,

        Defendant.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 20; Motion), filed December 1, 2021.   In the Motion, Defendant Florida Tourism Industry Marketing Corporation, Inc., commonly known as "Visit Florida," requests that the Court enter summary judgment in its favor pursuant to Rule 56, Federal Rules of Civil Procedure (Rule(s)).  <u>See</u> Motion at 1.  Plaintiff Barbara Harris timely filed a response in opposition to the Motion on December 22, 2021.  <u>See</u> Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Brief in Support (Doc. 23; Response).  On January 10, 2022, Visit Florida filed a reply.   <u>See</u> Defendant's Reply in Support of Its Motion for

Summary Judgment and Incorporated Memorandum of Law (Doc. 27; Reply).

Accordingly, this matter is ripe for review.

## I.   Background[1]

This case arises out of Harris's termination from Visit Florida in May of 2019.  See Motion, Ex. E: Declaration of David Dodd (Doc. 20-5; Dodd Decl.) at 2.  See generally Plaintiff's Complaint and Demand for Jury Trial (Doc. 1; Complaint), filed December 11, 2020.  Visit Florida is a private not-for-profit corporation that partners with the State of Florida to market the state to tourists.  See Motion, Ex. A: Declaration of Craig Thomas (Doc. 20-1; Thomas Decl.) at 1.  Most Visit Florida employees work at its main corporate office in Tallahassee where the advertising, public relations, accounting, and operations departments are located.  See id. at 2.  Visit Florida also operates five welcome centers along Florida's northern border.  See id.  At these welcome centers, visitors to the state can speak with Visit Florida's information specialists to obtain travel information and assistance in planning their itineraries.  See id.; Motion, Ex. B: Videotaped Deposition of Barbara McDaniel Harris (Doc. 20-2; Harris Depo.) at 17–18.  Employees who work at the welcome centers have "completely different" duties from the employees who work at the corporate

---

[1]  For the purposes of resolving Visit Florida's Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to Harris.  However, the Court notes that these facts may differ from those ultimately proved at trial.  See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

headquarters.   Thomas Decl. at 2.   Indeed, the welcome centers are "functionally separate enterprises." Id.  Harris began working for Visit Florida as an information specialist in 2000.  See Harris Depo. at 15.  She remained in that position, working at Visit Florida's welcome center on I-75, until her termination on May 23, 2019.  See id. at 17–18; Harris Depo., Ex. B (Doc. 21-2; RIF Age List) at HARRIS3.[2]

During the 2019 legislative session, the Florida Legislature reduced its annual appropriation for Visit Florida from $76 million to $50 million.  See Thomas Decl. at 2.  As a result, Visit Florida's senior management decreased the corporation's budget for personnel from $13.2 million to $8.5 million and determined that the new budget required a reduction-in-force (RIF).  See id.; Motion, Ex. F: Defendant's Response to Plaintiff's First Set of Interrogatories to Defendant (Doc. 20-6; Defendant's Discovery Response) at 3.   In Visitor Services, the department which included the welcome centers, Visit Florida determined that labor costs would need to be reduced by $1.2 million.  See Thomas Decl. at 2; see also Harris Depo. at 42 (stating that Harris did not have a reason to dispute that Visit Florida had to terminate some individuals because of the large budget cut).   Craig Thomas, the Chief Operating Officer and General Counsel for Visit Florida, tasked David Dodd, the Vice President of

---

[2]  Because the CM-ECF page numbers do not display properly on this document, the Court refers to the Bates stamp numbers found in the bottom right of the document.

Visitor Services, with reducing staff at the welcome centers.  See Thomas Decl. at 1; Motion, Ex. D: Deposition of David Dodd (Doc. 20-4; Dodd Depo.) at 6, 10. Dodd "was the sole decision-maker regarding the termination decisions in the Welcome Centers."  Defendant's Discovery Response at 3; see Motion, Ex. C: Videoconference Deposition of Craig Thomas (Doc. 20-3; Thomas Depo.) at 9–10, 18; Dodd Depo. at 10.  At the time of the RIF, Dodd was 56 years old.  See Dodd Decl. at 2.  Dodd interacted with Harris over the course of many site visits to the I-75 welcome center.  See Dodd Depo. at 7–8.  The two had a good relationship, and Harris acknowledged in her deposition that she had no reason to believe that Dodd would discriminate against her based on her age.  See id. at 8; Harris Depo. at 43–44.

As part of planning for the RIF, Dodd told the managers at each welcome center to determine whether any employees were planning on voluntarily leaving or retiring.  See Dodd Decl. at 1.  About a month or a month and a half before Harris's termination, the assistant manager at the I-75 welcome center asked Harris when she was planning to retire.  See Harris Depo. at 18, 24, 27. The assistant manager said that she was asking all of the information specialists when they planned to retire because she had to know for the budget. See id. at 24–25.  Harris responded that she did not plan to retire until September 2021 when she reached her full retirement age.  See id. at 26.  Each welcome center manager reported to Dodd that no one was planning on leaving

soon.  See Dodd Decl. at 2.  Dodd did not know Harris's specific response, and he declared that the response from the managers had no effect on any of the termination decisions.  See id.

Thomas expected Dodd to use his best business judgment and told him to select those who would be terminated at the welcome centers based on their overall merit and utility.  See Thomas Depo. at 16, 18, 20.  Dodd considered "merit and utility" to mean the ability to take care of tasks in multiple areas and to work together with others as a cohesive team.  See Dodd Depo. at 18–19.  In making his decisions, he relied on his experience visiting the welcome centers and communications daily or every other day with the managers there.  See id. at 12.  Dodd did not consult any past performance reviews or customer feedback.  See id. at 20–21.  According to Dodd, age was never a consideration for employment in his department.  See id. at 28.

Because all of the employees at the I-75 welcome center, including Harris, were good at their jobs, choosing whom to terminate from this location was challenging.  See id. at 21–22; Defendant's Discovery Response at 6.  Most of the employees had "plenty of experience and pretty good customer service, too, all things being equal."  Dodd Depo. at 11.  In fact, "under normal circumstances, everybody would've still remained employed."  Id. at 29.  Dodd stated that the deciding factor was the ability to get along with the others on the team.  See id. at 22.  Although Harris never had any problems with

coworkers that led to discipline, Dodd testified that she was less able to work cohesively with the other employees.  See id.  Dodd recounted that Harris's name "came up a few times" regarding "disputes or disagreements" at the welcome center and that she was "kind of always at the center of any of the conflicts." Id. at 26.

When Visit Florida terminated Harris in May 2019, she was 63 years old. See Harris Depo. at 23.  At that time, the I-75 welcome center had a manager (age 67), an assistant manager (age 60), six information specialists (ages 40, 57, 63, 67, 69, and 70), and two maintenance specialists (ages 29 and 63).  See Dodd Decl. at 2.; see also Harris Depo. at 22–23.  Two information specialists older than Harris and two information specialists younger than Harris were retained. See Harris Depo. at 35–36.

Prior to the May 2019 RIF, thirty-four out of forty total employees at the welcome centers were over the age of 40.  See Dodd Decl. at 2.  Eighteen out of the twenty-two information specialists were older than 40.  See id.  During the RIF, Visit Florida terminated eight information specialists.  See RIF Age List at HARRIS9–HARRIS11; see also Thomas Depo. at 25 (explaining that the RIF Age List from HARRIS9 through HARRIS11 shows employees who were terminated in the May 2019 RIF).  Six of the eight terminated information specialists were over the age of 40.  See RIF Age List at HARRIS10.  Across the

entire company, forty-four employees were terminated in the RIF, and thirty of them were 40 years of age or older.  See id. at HARRIS9–HARRIS11.

After the RIF, Visit Florida involuntarily terminated four employees between August 9, 2019, and June 30, 2021.  See Notice of Filing Exhibits (Doc. 24; Termination List) at 1–4.  Of those, only one was over the age of 40.  See id. at 2.  During a similar period from May 28, 2019, through July 12, 2021, Visit Florida hired nine people, including three information specialists.  See Response, Ex. B: New Hires After 2019 Reduction in Force (Doc. 24-1; Hire List) at 1–2.  Of those new hires, four were over the age of 40, including two of the three information specialists.  See id. at 2.  Two of these information specialists had been part of the RIF, but were then rehired when positions became available after voluntary resignations.  See id. at 3; Defendant's Discovery Response at 5; Dodd Depo. at 34–36.  The third information specialist was part of the RIF and was briefly rehired as temporary help.  See Hire List at 3.

Kimberly Hineman was the Director of Human Resources at Visit Florida from January 2004 through May 2019.  See Motion, Ex. H: Deposition of Kimberly Hineman (Doc. 20-8; Hineman Depo.) at 9.  Visit Florida terminated her employment as part of the RIF.  See id.  Hineman testified that, in April 2019 in conducting an unrelated investigation, she accessed payroll statistics about Visit Florida employees who were terminated in the two or three years prior to that time.  See id. at 11, 13.  According to Hineman, at least a majority

of the persons terminated during that period were over the age of 40.  See id. at 16.  Hineman did not know how many people were on the report that she viewed or why any of these individuals were terminated, nor did she recall any specific person or position.  See id. at 19–20.  The majority of those on her report were in the corporate headquarters because there was "very little turnover" at the welcome centers.  Id. at 20.  Hineman stated that over the two to three years before the RIF, the majority of people hired by Visit Florida were under the age of 40.  See id. at 18.  Hineman did not know the specific reasons why individuals were hired.  See id. at 22–23.  However, she testified that it was "very clear" that Visit Florida wanted a younger work force because "that's what they were hiring."  See id. at 21.  Hineman based her opinion on the statistics that she viewed.  See id. at 22.  Hineman believed that illegal age discrimination occurs whenever someone over the age of 40 is fired and someone under 40 is hired for that job.  See id. at 23.  As relevant to this action, Hineman, like Harris, testified that she had no reason to believe that Dodd would discriminate against an older employee.  See id. at 24–25.

Before her termination, Harris never made any complaint or charge of age discrimination and did not participate in any investigation of discrimination or give testimony about such an investigation.  See Harris Depo. at 52.  Up to that point, Harris "never thought that Visit Florida would discriminate against" her.  See id. at 54. After her termination, however, Harris

filed a charge of discrimination with the Florida Commission on Human Relations and the United States Equal Employment Opportunity Commission (EEOC) against Visit Florida asserting age discrimination.  <u>See</u> Complaint at 2.  On October 9, 2020, EEOC issued a Dismissal and Notice of Rights.  <u>See</u> <u>id.</u>  Thereafter, Harris initiated the present action on December 11, 2020, by filing her four-count Complaint alleging claims of discrimination and retaliation under the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 <u>et</u> <u>seq.</u> (ADEA) and the Florida Civil Rights Act, Fla. Stat. § 760.10 (FCRA).  <u>See</u> <u>generally</u> Complaint.

## II.    Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[3]  An issue is

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 Advisory Committee's Note 2010 Amends.

The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as

genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."

---

a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.  See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case.").  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## III.  Discussion

As a preliminary matter, the Court notes that both the age discrimination claims and the retaliation claims under the FCRA are analyzed under the same framework as Harris's ADEA claims.  Mazzeo v. Color Resols. Int'l, LLC, 746 F.3d 1264, 1266 (11th Cir. 2014); see also Cardelle v. Miami Beach Fraternal Ord. of Police, 593 F. App'x 898, 903 (11th Cir. 2014).  Thus, the law applicable to and the Court's discussion of Harris's ADEA discrimination and retaliation claims also apply to her claims under the FCRA.

## A.      Discrimination

The ADEA and FCRA make it unlawful for an employer to discriminate against an employee because of such employee's age.  See 29 U.S.C. § 623(a)(1); Fla. Stat. § 760.10.  The laws protect "individuals who are at least 40 years of age."  29 U.S.C. § 631(a); see Miami-Dade County v. Eghbal, 54 So. 3d 525, 526 (Fla. 3d DCA 2011) (per curiam).  "A plaintiff may establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) (citation omitted).  Here, Harris contends that circumstantial evidence creates a triable issue of fact as to Visit Florida's intent in firing her. See Response at 8–9.  ADEA claims premised on circumstantial evidence rather than direct evidence are evaluated under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The Eleventh Circuit Court of Appeals has instructed,

> Where . . . the employer produces evidence that it discharged the plaintiff during a RIF, "the plaintiff establishes a prima facie case by demonstrating (1) that [s]he was in a protected age group and was adversely affected by an employment decision, (2) that [s]he was qualified for [her] current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching that decision."

Watkins v. Sverdrup Tech., Inc., 153 F.3d 1308, 1314 (11th Cir. 1998) (quoting Williams v. Vitro Servs. Corp., 144 F.3d 1438, 1441 (11th Cir. 1998)).  If the

plaintiff presents a prima facie case, "the burden of <u>production</u> is shifted to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." <u>Sims v. MVM, Inc.</u>, 704 F.3d 1327, 1333 (11th Cir. 2013) (emphasis in original) (citing <u>Tex. Dep't of Cmty. Affs. v. Burdine</u>, 450 U.S. 248, 254–55 (1981)). If the defendant meets this burden of production, "the employee is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination." <u>Id.</u> (citations omitted). "Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee." <u>Id.</u> (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506–07 (1993)).

### 1.    Prima Facie Case

It is undisputed that Harris meets the first two elements of the prima facie case. <u>See</u> Motion at 13; Response at 9. At 63, she was in the protected age group, she suffered an adverse employment action when she was involuntarily terminated, and she was qualified for her current position. <u>See</u> Harris Depo. at 23; Dodd Decl. at 2; Dodd Depo. at 21. But as to the third element, Visit Florida argues that Harris has not presented evidence to support a finding that Visit Florida intended to discriminate against her because of age. <u>See</u> Motion at 13–14. Visit Florida asserts that the record evidence cannot support a finding of discrimination because some information specialists older than Harris were retained and some younger than Harris were terminated. <u>See</u> <u>id.</u> at 14. Visit Florida also emphasizes that the relevant decisionmaker, Dodd, was himself

part of the protected class.  <u>See</u> <u>id.</u> at 15.  Visit Florida contends that Harris's statistics do not support her claim of intentional discrimination and that Hineman's testimony is nothing more than a "conclusion lacking foundation." <u>Id.</u> at 15–18.  In her Response, Harris argues that the following evidence supports a finding of intentional discrimination: (1) statistics of who was terminated in the 2019 RIF; (2) statistics of who was hired after the RIF; and (3) Hineman's testimony about a pattern of terminating employees over 40 and hiring employees under 40.  <u>See</u> Response at 10–12.

In discrimination cases, "[s]tatistical evidence is an appropriate method for demonstrating both a prima facie case of discrimination and pretext." <u>Brown v. Am. Honda Motor Co.</u>, 939 F.2d 946, 952 (11th Cir. 1991).  Cases in the Eleventh Circuit "are clear, however, that 'statistics alone cannot make a case of individual disparate treatment.'"  <u>Carter v. Three Springs Residential Treatment</u>, 132 F.3d 635, 642 n.5 (11th Cir. 1998) (quoting <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1131 (11th Cir. 1984)); <u>see</u> <u>Oliver v. VSoft Corp.</u>, No. 1:09-CV-0185-CAP-WEJ, 2010 WL 11505776, at *11 (N.D. Ga. Feb. 2, 2010) (applying <u>Carter</u> and <u>Carmichael</u> in an ADEA case involving a RIF), <u>report and recommendation adopted</u>, No. 1:09-CV-185-CAP-WEJ, 2010 WL 11506873 (N.D. Ga. Feb. 23, 2010).[4]  Moreover, statistics presented without

---

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310

an analytic foundation "are virtually meaningless." <u>Brown</u>, 939 F.2d at 952–53. To establish a sufficient analytic foundation, statistical "calculations must come from a witness, not a party's lawyer." <u>Watkins</u>, 153 F.3d at 1315 n.16. A plaintiff who was terminated must show "statistical significance" and present a complete picture of who was terminated and who was retained. <u>Id.</u> at 1315 ("Noticeably absent from Watkins's mathematical observations, however, was the fact that TEAS retained scores of employees well over forty years-of-age after the RIF."). To raise an inference of discrimination, statistics must "compare similarly situated individuals" and "eliminate nondiscriminatory reasons for the numerical disparities." <u>Toth v. McDonnell Douglas Aerospace Servs. Co.</u>, 31 F. Supp. 2d 1347, 1354 (M.D. Fla. 1998) (quoting <u>Doan v. Seagate Tech., Inc.</u>, 82 F.3d 974, 979 (10th Cir. 1996)); <u>see</u> <u>Watkins</u>, 153 F.3d at 1315 ("The most fatal shortcoming, though, was that . . . plaintiffs did not identify any new employees similarly situated to themselves."). When statistical evidence fails to meet these criteria, it is "so flawed as to render it insufficient to raise a jury question." <u>Toth</u>, 31 F. Supp. 2d at 1354 (quoting <u>Furr v. Seagate Tech., Inc.</u>, 82 F.3d 980, 986 (10th Cir. 1996)).

Here, Harris's statistical evidence is so flawed that it fails to raise a jury question. First, these statistics by themselves fail to raise a genuine issue of

_____

(11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

- 15 -

fact for trial on Harris's claim of individual disparate treatment.  See Carter, 132 F.3d at 642 n.5; Oliver, 2010 WL 11505776, at *11.  Second, even if it could suffice, Harris's statistics would fail because Harris does not present any analytic foundation from a witness or otherwise show how the numbers have statistical significance.  See Brown, 939 F.2d at 952; Watkins, 153 F.3d at 1315 & n.16.  In fact, when placed in the proper context, the statistics raise no inference of discrimination.  The most relevant statistic is what information specialists were terminated or retained at the I-75 welcome center during the RIF because those employees were similarly situated to Harris in all material respects.  See Watkins, 153 F.3d at 1315; Toth, 31 F. Supp. 2d at 1354.  When Visit Florida terminated Harris and one other information specialist, all of the information specialists at the I-75 welcome center were age 40 or older.  See Dodd Decl. at 2.  Visit Florida retained two information specialists older than Harris and two information specialists younger than Harris.  See Harris Depo. at 35–36.  These circumstances allow no inference that Visit Florida intended to discriminate against Harris based on her age.  See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1083 (11th Cir. 1990) ("[T]he circumstances of Noe's discharge as a buyer allow no inference that age was a substantial motivating factor.  Three of the four buyers retained were over age forty, and two of those were older than Noe.").

Even if the Court reviews the RIF more broadly, the numbers still do not support Harris's claim. Prior to the RIF, eighteen out of twenty-two information specialists (82%) were over the age of 40. See Dodd Decl. at 2. Of the eight information specialists terminated, six (75%) were over the age of 40. See RIF Age List at HARRIS10. Thus, the percentage of information specialists over the age of 40 who were terminated (75%) roughly lines up with the total percentage of information specialists over the age of 40 (82%). Across the entire corporation, forty-four employees were terminated, and thirty of them were at least 40 years old. See id. at HARRIS9–HARRIS11. However, this statistic is not probative evidence of discrimination against Harris because this number includes employees at the corporate headquarters who were not similarly situated to her. See Watkins, 153 F.3d at 1315; Toth, 31 F. Supp. 2d at 1354; Thomas Decl. at 2 (noting that the welcome centers are "functionally separate enterprises" where the employees have "completely different" duties from the employees at the corporate headquarters). In addition, Harris cannot put this number in the relevant context because the record does not include the age distribution for all employees.

Moreover, the ages of those hired and involuntarily terminated after the May 2019 RIF are not probative of whether Harris was discriminated against during the RIF. Of the nine people hired, four were over the age of 40. See Hire List at 2. Three information specialists were hired, and two of them were older

than 40.  See id.  These two individuals were part of the RIF and rehired when positions became available through voluntary resignations.  See id. at 3; Defendant's Discovery Response at 5; Dodd Depo. at 34–36.  These circumstances do not suggest discrimination.  These numbers also lack probative value because they are not placed in the proper context of who applied for these positions.  When hiring is at issue, the necessary analytic foundation for statistical evidence is how many members of the protected class applied and failed compared to the success rate of equally qualified applicants outside the protected class.  See Brown, 939 F.2d at 952.  Harris has not provided that analytic foundation.  In addition, of the four employees involuntarily terminated after the RIF, only one was over the age of 40.  See Termination List at 1–4.  From this evidence, no reasonable juror could infer the existence of any scheme or an intention to force out older information specialists and replace them with younger employees later.

Finally, Hineman's testimony is insufficient to raise a jury issue as to intentional discrimination.  Hineman believed that Visit Florida had a pattern of terminating people over 40 and hiring people under 40.  See Hineman Depo. at 16, 18, 21.  However, Hineman could not recall the exact time period the information she reviewed covered, the number of people who had been terminated, any specific person or position, or any of the reasons why those individuals were terminated.  See id. at 11, 13, 18–20.  Similarly, Hineman did

not know the specific reasons why individuals were hired.  See id. at 22–23.  In short, Hineman did not present an analytic foundation so that the ages of those terminated and hired could be compared to the ages of similarly situated employees and applicants.  Moreover, the employees on the report that Hineman saw were not similarly situated to Harris because they were not terminated during the RIF and most of them worked in the corporate headquarters.  See id. at 20; see also Thomas Decl. at 2 (discussing the differences between the corporate headquarters and the welcome centers).  Harris produced no evidence that any of those terminated were discriminated against by the relevant decisionmaker in this case, Dodd.  Rather, Hineman expressed her belief that it was "very clear" that Visit Florida wanted a younger work force because "that's what they were hiring."  Hineman Depo. at 21.  However, this opinion is not probative evidence because it arises from the inadequate statistics that Hineman viewed, see id. at 22, as well as her misunderstanding of the law, see id. at 23 (explaining her belief that illegal age discrimination occurs whenever someone over the age of 40 is fired and someone under 40 is hired for that job).[5]  The Court concludes that there is no genuine

---

[5]  Harris argues that Hineman can testify as to her own termination during the RIF.  See Response at 12.  But the record contains no evidence that Hineman believed that she was a victim of discrimination.  In addition, her situation is not sufficiently similar to Harris's to render her testimony probative as to Dodd's intent in terminating Harris.  See Watkins, 153 F.3d at 1315; Toth, 31 F. Supp. 2d at 1354.  Hineman was at the corporate headquarters, was not an information specialist, and was not terminated by Dodd.

dispute of material fact and that the evidence could not lead a factfinder reasonably to conclude that Visit Florida intended to discriminate on the basis of age.  As such, Harris has failed to present a prima facie case.[6]

### 2. Legitimate, Nondiscriminatory Reasons

Even if Harris has presented a prima facie case, Visit Florida is still entitled to summary judgment because it has proffered unrebutted legitimate, nondiscriminatory reasons for Harris's termination.  Visit Florida stated that it terminated Harris because of a corporation-wide RIF.  See Dodd Depo. at 29 ("[U]under normal circumstances, everybody would've still remained employed.").  Dodd selected Harris for termination because Dodd perceived her to be less able than her coworkers to get along well with the entire team.  See id. at 22.   These reasons are nondiscriminatory and might motivate a reasonable employer.  See Earley, 907 F.2d at 1084 n.5 ("The evidence shows that Champion acted for legitimate economic reasons in reducing its work force . . . and then terminating plaintiffs upon determining that they were the least effective members of the Materials Department."); Toth, 31 F. Supp. 2d at 1352.

Therefore, the burden returns to Harris to show that Visit Florida's proffered legitimate business reasons are pretextual and the true reason for her

---

[6]  Harris asserts that statistical evidence is itself a method of making a prima facie case apart from the burden-shifting framework.  See Response at 8.  Whether analyzed within the McDonnell Douglas framework or separately, Harris's statistics have such slight probative value that they do not establish a prima facie case.

termination was age discrimination.  <u>See</u> <u>Sims</u>, 704 F.3d at 1333.  A plaintiff may demonstrate that an employer's reason is pretextual by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."    <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted).  However,

> [a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

<u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citations omitted). Indeed, as the Supreme Court has explained, a reason cannot be a "pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." <u>St. Mary's</u>, 509 U.S. at 515 (emphasis in original, quotations omitted).  Significantly, at this stage, the plaintiff's burden of demonstrating that the employer's proffered reason was not the true reason for her termination "merges with the [plaintiff's] ultimate burden of persuading the court that she has been the victim of intentional discrimination."  <u>Burdine</u>, 450 U.S. at 256.  Thus, "the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged

discrimination."  Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1325 (11th Cir. 2011).

Harris argues that the necessity of the RIF itself may be questionable because of the alleged pattern of discrimination. See Response at 13, 18.  Harris also asserts that merit and overall utility are subjective criteria that should be subject to close scrutiny.  See id. at 15.  According to Harris, Dodd's judgment was flawed because he based his decision on his own experience instead of consulting formal performance reviews and customer feedback mechanisms. See id. at 15–16.  Harris argues Dodd could not "effectively apply" his own criteria.  Id. at 18.  In contrast, Visit Florida notes that nothing in the record rebuts the reason for the RIF or the evidence that Dodd honestly perceived Harris to be less able to work cohesively with her coworkers.  See Motion at 21. Visit Florida argues that the large budget cut is itself a legitimate reason to eliminate positions.  See id. at 20.  Visit Florida also maintains that Harris "cannot merely quarrel with Mr. Dodd's wisdom or substitute her own business judgment."  Reply at 6.

Regarding the RIF as a whole, the Court finds that it is undisputed that Visit Florida had to substantially reduce its payroll because the state legislature cut its funding.  See Thomas Decl. at 2; Harris Depo. at 42.  As discussed above, the RIF itself and Visit Florida's subsequent hires do not demonstrate a pattern of discrimination.  The problems with Harris's statistical

data become even more pronounced at this stage of the inquiry.  See Watkins, 153 F.3d at 1316 ("[W]hile this superficial presentation [of statistical evidence] may have satisfied plaintiffs' prima facie burden, it failed to support any inference of intentional age discrimination after [the defendant] explained the data in a plausible, age-neutral fashion.").  Consequently, Harris has not produced evidence to rebut Visit Florida's explanation that Harris was terminated in a valid RIF.

Neither has Harris presented evidence suggesting that Dodd's specific reason for selecting Harris was pretextual.  The Eleventh Circuit en banc has instructed that "[a] subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the McDonnell Douglas/Burdine analysis."  Chapman, 229 F.3d at 1033.  The court explained,

> A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion. . . . [I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation.  However, if the defendant employer said, "I did not like his appearance because . . . he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance.

Id. at 1034.  A clear and reasonably specific explanation is important so that "there will be objective factors that can be tested against other testimony and evidence."  Id. at 1034 n.25.

Here, Visit Florida proffered Dodd's subjective view of Harris's ability to get along with her coworkers.  Dodd articulated a reasonably specific factual basis for his subjective opinion by stating that Harris's name "came up a few times" regarding "disputes or disagreements" at the welcome center and that she was "kind of always at the center of any of the conflicts."  Dodd Depo. at 26. Harris had ample opportunity to place evidence in the record disputing the specific factual bases for Dodd's view.  For example, Harris could have declared that she was not involved in workplace disputes or that others were involved in more disputes than she was.  Harris could have solicited testimony from her coworkers about who caused workplace problems and about her ability to get along with them.  But Harris did not produce any evidence disputing Dodd's assessment.  Thus, she failed to meet the proffered reason head on and rebut the sincerity of Dodd's view.  See Chapman, 229 F.3d at 1030, 1036 ("Chapman had a fair chance to respond to the objective bases for the subjective reason proffered for not hiring him, but Chapman never refuted those objective bases.").

Instead, Harris seems to disagree with the wisdom of Dodd's choice to rely on his own experience instead of formal measures like annual evaluations.  See Response at 15–18.  Notably, an "employer may [terminate] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  Walton v. Cives

Corp., 491 F. App'x 29, 32 (11th Cir. 2012) (quoting Nix v. WLCY Radio/Rahall

Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)).  Indeed, the Eleventh Circuit

has unequivocally stated,

> federal courts do not sit as a super-personnel department that
> reexamines an entity's business decisions.  No matter how
> medieval a firm's practices, no matter how high-handed
> its decisional process, no matter how mistaken the firm's
> managers, the ADEA does not interfere.  Rather our inquiry is
> limited to whether the employer gave an honest explanation of its
> behavior.

Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (citations

and quotations omitted).  Here, Dodd's decision may have been wise or foolish,

but there is no evidence that it was discriminatory.   Harris herself stated that

she had no reason to believe that Dodd would discriminate against her based

on her age.  See Harris Depo. at 44.  Hineman similarly acknowledged she had

no reason to believe that Dodd would discriminate against older employees.  See

Hineman Depo. at 24–25.  Harris has not met her burden to show pretext,

especially considering that Dodd himself was 56 years old.  See Dodd Decl. at 2;

Elrod, 939 F.2d at 1471 ("Elrod faces a difficult burden here, because all of the

primary players behind his termination . . . were well over age forty and within

the class of persons protected by the ADEA.  These three are more likely to be

the victims of age discrimination than its perpetrators.").  Therefore, Harris has

not produced evidence that creates a triable issue of fact as to the legitimacy of

Visit Florida's proffered reasons for terminating her.  Because Harris fails to

make a prima facie case or produce evidence to rebut Visit Florida's legitimate, nondiscriminatory explanation for her termination, summary judgment is due to be granted in favor of Visit Florida on Harris's age discrimination claims.[7]

## B.   Retaliation

Visit Florida argues that summary judgment is also due to be granted on Harris's retaliation claims because Harris did not engage in any protected activity and cannot establish a causal connection between her action and her termination.  See Motion at 22–23.  In her Response, Harris contends that stating that she did not want to retire until her full retirement age was protected activity and that the temporal proximity between her statement and her termination establishes causation.  See Response at 19–20.

---

[7] Harris argues that the McDonnell Douglas framework is not the only way that her claim may survive summary judgment.  She contends that she may establish a triable issue of fact through presenting a convincing mosaic of circumstantial evidence.  See Response at 8–9, 18.  The Court recognizes that a "plaintiff will always survive summary judgment if [she] presents . . . 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination.'"  Lewis v. City of Union City, 934 F.3d 1169, 1185 (11th Cir. 2019) (second alteration in original) (quoting Smith, 644 F.3d at 1328).  Evidence which may create a convincing mosaic includes "(1) 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual."  Id. (alteration in original) (quoting Silverman v. Bd. of Educ. of City of Chi., 637 F.3d 729, 733–34 (7th Cir. 2011), overruled by Ortiz v. Werner Enters., Inc., 834 F.3d 760 (7th Cir. 2016)).  Here, Harris has not presented a convincing mosaic of circumstantial evidence that would allow a reasonable jury to infer intentional discrimination.  The record in this case demonstrates no suspicious timing, no ambiguous statements, and no other bits and pieces from which an inference of discriminatory intent might be drawn.  Similarly situated employees who were substantially younger than Harris were not systematically better treated.  And Harris has not produced any evidence to create a triable issue of fact as to Visit Florida's justification for her termination.

To make a prima facie showing of retaliation under the ADEA and FCRA, "a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002) (citations omitted); Carter v. Health Mgmt. Assocs., 989 So. 2d 1258, 1263 (Fla. 2d DCA 2008).  With respect to the first element of her prima facie case, Harris must show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices."  Weeks, 291 F.3d at 1311 (quoting Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)).  As to the third element – whether there is a causal connection between the adverse action and the protected activity – the Eleventh Circuit has stated,

> [t]he causal link in the retaliatory discharge formula is not the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action. Such a connection would rise to the level of direct evidence of discrimination, shifting the burden of persuasion to the defendant. Rather, we construe the 'causal link' element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated.

Hairston, 9 F.3d at 920 (quoting Simmons v. Camden Cnty. Bd. of Ed., 757 F.2d 1187, 1189 (11th Cir. 1985)).  Of course, "[a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action."  Id. (quoting

Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)).  Finally, as with a substantive age discrimination claim, if the employer articulates legitimate reasons for its actions, the presumption created by the prima facie case is rebutted and the plaintiff must show the employer's proffered reason was not the actual reason for the adverse employment action.  See id. at 919; see also Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006).

Here, Harris has not produced evidence sufficient to create a triable issue of fact on the first element or the third element of the prima facie case.  As to the first element, Harris contends that she engaged in protected activity by asserting that she wanted to continue working until her full retirement age.  See Response at 19.  However, Harris does not identify how, through that statement, she opposed any practice made unlawful under the ADEA or the FCRA.  See Harris Depo. at 52 (clarifying that, before her termination, Harris never made any complaint or charge of age discrimination and did not participate in any investigation or give testimony about age discrimination); see also Earley, 907 F.2d at 1082 ("To accomplish a RIF by natural attrition and voluntary early retirement is lawful.").  Nothing in the record suggests that, in mentioning her desire to work until her full retirement age, Harris sincerely and reasonably believed that Visit Florida was engaged in practices that violated the ADEA and the FCRA.  See Harris Depo. at 54 (stating that she "never thought that Visit Florida would discriminate against" her).

As to the third element, Harris argues that the close temporal proximity between her statement to the assistant manager and her termination demonstrates a causal connection.  See Response at 19–20.  However, the unrebutted evidence in the record is that all of the welcome center managers told Dodd that no one planned on retiring soon.  See Dodd Decl. at 2.  Harris was not singled out, and Dodd did not know what specifically she had said.  See id.  Therefore, Dodd's decision to terminate her instead of other information specialists cannot be causally related to her statement.  See Hairston, 9 F.3d at 920.  The Court finds that Harris has not made a prima facie case of retaliation.  Even if Harris has established a prima facie case of retaliation, Visit Florida has satisfied its burden of producing legitimate nondiscriminatory reasons for her termination, as discussed above, and Harris has failed to demonstrate that these reasons are a pretext for prohibited retaliatory conduct.  See id. at 919; see also Drago, 453 F.3d at 1307.  Because no genuine issue of fact remains for trial, summary judgment is due to be granted in favor of Visit Florida as to Harris's retaliation claims under the ADEA and the FCRA.

## IV.  Conclusion

In conclusion, viewing the record in the light most favorable to Harris, the Court finds that Harris has failed to produce evidence that would permit a reasonable jury to find that Visit Florida, in deciding to terminate Harris's employment, intended to discriminate against her on the basis of her age or to

retaliate against her for engaging in protected activity.  As such, summary judgment is proper as to the entirety of Harris's claims.  Accordingly, it is

ORDERED:

1. Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 20) is **GRANTED**.

2. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant Florida Tourism Industry Marketing Corporation, Inc.

3. The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on May 31, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record